and only case. The lawyers are going to argue. Step up please. And let us know your names. Katie Anderson on behalf of the state appellate defender. Good afternoon. Assistant State's what you have to say. Ms. Anderson, you have, you both have 20 minutes, neither of you have to use it, but would you like to reserve some of your 20 minutes for rebuttal? Yes, Your Honor, I would like to reserve five minutes for rebuttal. All right. You may have a seat and you may begin. May it please the court. My name is Katie Anderson and on behalf of the state appellate defender, I would like to The state concedes that it was improper for the trial court to order Woods to participate in a PSI interview, but maintains that number one that Woods did not make a record upon which relief can be granted and two that Woods has forfeited this claim. Both of these arguments are without merit. As to the sufficiency of the record, these states' argument that Woods failed to make a record upon which relief can be granted because the record does not reflect whether the probationary offence may be terminated does not support the state's claim. All the arguments are without merit. The trial court ordered Woods to participate in the PSI interview because he had exercised his right to remain silent or respectfully declining to answer questions during the first PSI interview. So this right here is the Fifth Amendment violation because the trial court compelled him to be a witness against himself. So your point is that the probation officer then giving him the Miranda warnings when he was re-interviewed was irrelevant? That is exactly correct, Your Honor. Was there any evidence that he did get the Miranda warnings? There is absolutely no evidence, Your Honor, that he did or didn't. There is no evidence either way. But our argument is that in light of the court's clear order that Woods had to participate in the interview, it doesn't matter either way. Under the circumstances, no reasonable person would think that they would not be penalized for not following the trial court's clear and direct order. And furthermore, the state has cited no authority in their brief that says that a probation officer can override a judge's explicit and direct order like the trial court statement here. Furthermore, Woods… I mean, I would think we know that's not true. I mean, that a probation officer probably can't override a judge's direct order. Correct. And that's exactly the point, is here the trial court's order was clear and direct. But, of course, if he had objected, all of this could have gotten flushed out at the trial court. What happened after that directive would have been flushed out on a more complete record if he had objected? Or said that that pre-sentence report should not be used because I was compelled to give testimony as part of that report. And none of that happened, correct? That is correct. But we do know that Woods exercised his right to remain silent during the first attempted PSI interview and that he only waived that silence when the trial court said that he had to. But we don't know that. We don't know what his lawyer told him. We don't know whether the lawyer encouraged him to cooperate for his own benefit. We don't know whether the defendant saw the light of day after he was advised by the court that he should cooperate, must cooperate, however she said it. I mean, his lawyer very well could have sat down with him and convinced him that you're being a hard head, it's not going to be helpful to you, you should cooperate. Could he not acquiesce in the judge's order and say, you know what, she's got a point? It may not have turned out okay for him, but could he not have done that? The bottom line, though. Or could he have done that? He could have done that. And we don't have any evidence that he didn't do that, nor do we have any evidence that he did do that. That is correct. So we have no record to draw any conclusion one way or the other as to what motivated the defendant to do what he did. That is correct. Well, the one thing we do have on the record is the trial court's order. That is also correct, Your Honor. So basically... And we have him first refusing before the trial court. That's the record. That is also correct. It's very clear that Woods indicated his intent to remain silent during the PSI interview until the trial court said that he could not remain silent. She specifically stated that she was ordering him to cooperate with the probation department and complete the interview. Therefore, anything that happened after that is irrelevant in light of the judge's clear and direct order. As to the issue of forfeiture, the State argues in its brief that Woods forfeited this claim. And in doing so, they rely extensively on Hampton and Hillier. But both of these cases are distinguishable. In Hampton, the Illinois Supreme Court did apply the waiver rule because there was a factual question as to whether the probation officer Mirandized the defendant before the PSI interview. But the Hampton court specifically noted that no contention was made by the defendant that his statements were in any way compelled, coerced, or otherwise rendered involuntary so as to have violated his privilege under the Fifth Amendment against compelled self-incrimination. But in this case, the record demonstrates that the trial court compelled Woods to waive his Fifth Amendment rights. So here, unlike Hampton, it's irrelevant whether the probation officer read Woods' Miranda rights before the PSI interview or not. Hillier is factually distinguishable for the exact same reason as Hampton. And furthermore, in Hillier... Let me ask you a question. How will this work on remand if we do agree with you? It goes back to a new judge. How does that new judge not know this history? Well, the new judge should order a new PSI. First of all, the new judge should ensure that Hampton is advised as to his Miranda rights and that they extend to the PSI interview and explain to him that he does have the choice to decide whether or not to answer questions. I do understand that. I do want to talk about that. But the judge is also going to read our opinion, right? That is correct. I mean, this is sort of this elephant is out there. This information is out there. I don't know how you put the genie back in the bottle. It's out there, right? That is correct. However, in Hyder, the Illinois Supreme Court in Hyder, there was a sentencing issue. It was a little bit different. In that case, the trial court improperly considered an aggravating factor that it should not have considered. And the Illinois Supreme Court said that upon remand, it should be assigned to a new trial court judge. While this obviously can't unring the bell, the Illinois Supreme Court said that this would remove any suggestion of unfairness. So under the Illinois Supreme Court's decision in Hyder, remanding this before a different judge would also provide some protections to Mr. Woods at the new sentencing hearing. So there would need to be an order that those aggravating factors that the trial judge considered cannot be considered. For example, the gang affiliation and the fact that he dropped out of school, I believe, either eighth or ninth grade. So how do we get that out of there? Well, you know, unfortunately, you know, once information is out there and it's in the record, it's out there in the record. However, the trial court judge could be explicitly ordered not to consider these as aggravating factors at the new sentencing hearing. And also on the topic of gang affiliation, I wanted to mention that in the PSI, Woods stated that he was a former gang member. And this was not acknowledged by either the state or the trial court at Woods' sentencing hearing. When they were talking about Woods' gang membership, they talked about it in present tense context. There was no acknowledgement whatsoever that Woods had renounced his gang membership. And that's particularly important under the facts of this case, where there was absolutely no evidence at trial that the offense was in any way gang related. Also, in Hillier, the state argues in its brief that the Hillier court would not consider the issue pursuant to the plain error doctrine, because the record didn't demonstrate a violation of the defendant's Fifth Amendment rights. But the Hillier court also specifically noted that it could not apply the plain error rule, because appellate counsel in that case didn't argue plain error. And you certainly have. Yes, we have argued that both prongs of the plain error rule apply. The state does not contest that the evidence at sentencing was closely balanced for first prong plain error purposes. Regarding second prong plain error, the state also does not contest that the use of a defendant's statements obtained in violation of his Fifth Amendment rights as aggravating factors violates the right to a fair sentence. Did you argue that it was closely balanced? Did you argue both prongs of plain error? Yes. And how was it closely balanced? The evidence at sentencing was closely balanced because the state presented only two aggravating factors, which were number one, the gang membership information that they obtained from the PSI, and number two, Woods' criminal history. The defense presented several factors in mitigation. They presented information from his family history. And where did that come from? That came from the PSI. So you're using the PSI both to help you and to argue against you. That is correct because the information in mitigation did come from the PSI. However, a pre-sentence investigation is not the only means that defense counsel has to introduce mitigating evidence into the record. But in this case, that's where it came from. The PSI, the same PSI that you're arguing helps them make a closely balanced argument. And the same PSI that you're arguing was used against them to his prejudice as far as sentencing. That is correct. So the PSI you're complaining about helped them in some degree. We are complaining that the information in the PSI was obtained in violation of his Fifth Amendment rights. So we're arguing that the PSI, the fact that he was ordered to complete the PSI, was the error itself. In order to consider plain error, this court first has to determine whether the error occurred. Here, the record reflects that the error occurred. The information in the PSI simply tells us that the information at sentencing was closely balanced so that this court can reach the error via first prong of the plain error doctrine. And the information that was made... I don't even understand what closely balanced means in the context of a sentencing analysis. I mean, you're guilty or not guilty. I understand what closely balanced means there, but what does it mean in sentencing? Closely balanced, you're just saying there's factors going both ways? That's your argument? That is correct, Your Honor. There are factors going both ways. So in this case, we had his close relationship with his mother who was deceased. His stepfather was also deceased after his mother's death. He helped raise his younger siblings. He ensured that they finished school and they both have good jobs now. And also... But of course, as Justice Pierce points out, all of that comes from what he told the investigator in the PSI. Yes. So if you take out the PSI, you have nothing. You have no aggravating, no mitigating. You have only his criminal history. I mean, just all I'm saying to you is it's difficult to wrap your mind around closely balanced. In this context, would it have been different if we'd taken the PSI out? Well, there would have been basically nothing if we took the PSI, what he told the investigator out. Right? I mean, there's kind of nothing except his criminal history, which was somewhat significant. That is correct. However, this case also falls under the second prong of the plain error doctrine. This Court has recognized that sentencing issues are regarded as matters affecting a defendant's substantial rights and are thus accepted from the doctrine of waiver. And that case was People v. Owens, 377 AILAP 3D 302, 1st District, 2007. And in that case, this Court did apply the plain error rule when the trial court incorrectly found that the defendant was eligible for an enhanced sentence. So there is precedent that states the second prong plain error applies when we have a sentencing issue. Sometimes. Certainly not always. That is correct. Furthermore, the state does not contest that the use of a defendant's statements obtained in violation of their Fifth Amendment rights as an aggravating factor violates the right to a fair sentencing proceeding. So the state has not contested our argument that this type of error falls under the second prong of the plain error doctrine. No, they've argued forfeiture. That's, I believe, how I read their brief, the essence of their entire argument is forfeiture, forfeiture, forfeiture. How does the Sprinkle Doctrine fit into your plain error analysis? The Sprinkle Doctrine would provide this Court with another way that it could reach the error if it did not want to, if it did not feel that either plain error or an effective assistance of counsel applied in this case. So basically, under the Sprinkle Doctrine, this Court can reach an unpreserved error when it was the conduct of the trial court at issue. So Sprinkle basically recognizes that it might not be in a defendant's best interest to interrupt or correct the trial court because that may come back to hurt the defendant later. So the Sprinkle Doctrine does provide some relief for unpreserved errors on appeal. Regarding ineffective assistance of counsel, Your Honors pointed out earlier, as did the state in its brief, that there were numerous things that defense counsel simply didn't do here that they could have done to protect Mr. Wood's Fifth Amendment rights. For example, as the state points out in their brief, the defense counsel did not object when the trial court ordered the defendant to comply with the PSI. The defendant did not make a motion to suppress the statements he made during the PSI. Defense counsel did not object when the PSI report was presented at the sentencing hearing or considered by the court in sentencing the defendant. Nor did defense counsel raise the issue in a post-sentencing motion. All of these things illustrate exactly how defense counsel was ineffective. And as to the apprentice prong, it's clear that the information obtained during the PSI factored into the trial court's decision at sentencing. The trial court referenced Wood's alleged gang involvement six times at sentencing and noted repeatedly that he had chosen a life of gangs and guns, despite the complete lack of evidence in the record that the offense was gang-related. The trial court also noted four times that Wood's had dropped out of school. And Wood's, in this case, received a sentence that was eight years over the minimum sentence. Therefore, it appears that the information in the PSI prejudiced Wood's by resulting in a sentence eight years above the minimum sentence. According to the Illinois Supreme Court, a sentence based on improper factors should not be affirmed unless the appellate court can determine from the record that the weight placed on the improperly considered factors was so insignificant that it did not lead to a greater sentence. In light of the fact that the trial court commented ten times on the information that was obtained from the PSI, it appears that this information did prejudice Wood's such that a new sentencing hearing is required. But the information in the PSI was, I used to be a gang member, right? That is correct. I'd be more sympathetic to your argument if you were saying the judge did not properly perceive that evidence and twisted it to say he was still a gang member. But that could be a mitigating fact, right? In other words, I had a tough childhood. My mom died of cancer. I had an abusive stepfather. I used to be in a gang, but I'm not in a gang anymore. Here I am. You know, give me a break. Or don't punish me as harshly as you could punish me. Right? That is absolutely correct. Right. So, again, perhaps the tactic of the defense lawyer was to encourage the defendant to follow the judge's directive and cooperate with the probation officer and lay it all out there so that the judge can see that there is a spark of hope out there. But in this case, the judge misperceived it and didn't read it as I used to be in a gang, interpreted the PSI as saying I'm still in a gang. I'm a gang member. You know, I live a life of guns. Which cuts against your argument that he was compelled to give the statement because we don't have a record as to why he gave the statement other than the judge's comment instructing him to give cooperation to probation. That is correct, Your Honor. We do know from the record of the sentencing hearing, though, that defense counsel did not argue that Woods was a former gang member and this was a factor in mitigation. At no point did defense counsel point out, like Your Honor just did, that the PSI very clearly reflected that Woods was no longer in a gang. The state mentioned this specifically in aggravation and defense counsel did not correct the state. Defense counsel did not argue in mitigation that Woods was a former gang member and that because he was no longer involved in the gang, this indicated that there was hope for him in light at the end of the tunnel that should warrant a lesser sentence. Nor did defense counsel correct the trial court when the trial court argued repeatedly that Woods had chosen a life of gangs and guns. Based on the trial court's repeated comments that Woods had chosen a life of gangs and guns, this indicates very clearly that the trial court, you know, wasn't seeing this as a mitigating factor and was, in fact, seeing it as an aggravating factor. And as Your Honor – It's partly because that's what the state argued. The state argued it was an aggravating factor. That is correct. And when the state argued it was an aggravating factor, they specifically directed the trial court to look at that information in the PSI. So the aggravating factor was specifically taken from the PSI used by the state and also relied on by the court to give Woods a sentence that was eight years above the minimum. Unless there's more questions, I think you need to preserve what time you have for rebuttal. Thank you, Your Honor. Good afternoon. Good afternoon. Your Honors, the Illinois Supreme Court has said in People v. Hilliard, and I quote, when the state asserts that a defendant has forfeited review of an issue, the appellate court must first determine if the state is correct. In this case, the defendant forfeited his Fifth Amendment claim. He failed to review his Fifth Amendment claim. He failed to make a record on the issue. We have no idea if the probation officer advised the defendant of his Miranda rights, and we have no idea if the defendant waived his right against self-incrimination. The record is completely silent as to both of those issues. There's no way to move forward with that legal analysis. But what about counsel's point that it, so what, if the probation officer said, you have the right to remain silent, you have everything you say, when the judge has just said, you have to talk to pretrial services? The trial court's order isn't a violation of his Fifth Amendment rights. Why not? It's the violation of, there's a lot of steps to get to in order to analyze the Fifth Amendment rights. Well, let's just start there. The trial judge says you must talk to pretrial services. Why is that not a Fifth Amendment violation? First, if this court were to get to the merits and consider that, the people's position is that the record is only sufficient enough to show that the trial court did not violate the defendant's Fifth Amendment right. That order doesn't do it. Why not? First of all, you didn't argue that, but why doesn't it? Because if a person wants the Fifth Amendment protections, he first must assert them. He did. He did. He said, I do not want to participate. He respectfully declined to answer the questions. But we have no idea from the record why he declined to answer those questions. And any doubt arising from the silence in the record has to be construed against the defendant. We have the transcript of the proceeding in which the judge said to the defendant, you need to do this. We have that transcript. And at that point, the defendant didn't object. The defendant didn't assert anything. He said nothing. But his silence and his refusal to answer questions is insufficient to assert the Fifth Amendment rights. That's where this legal doctrine comes in. At that point, you're in a situation, once you've been ordered to do something, that's when silence comes in. The defendant did exactly what I would have done. I would have said another word to the judge. The defendant had an attorney in court with him. As a sitting judge, I would have said another word to the judge. If I was sitting in the judge's courtroom and the judge ordered me to do something, I wouldn't have said a single word. There's nothing. And the defendant did exactly what I would have done. Respectfully, there's nothing in any of the transcripts that we do have that would indicate that any type of objection like that would have fallen on deaf ears. At all. No judge. You need to speak with them. I've ordered you to speak with them. You need to speak with them. Understood. That's what the judge said to him. That sounds like an order to speak to them. And that sounds like a Fifth Amendment violation. And there's nothing in your brief that suggests this to me. Because the people don't concede anything. Because in this case, the issue is forfeiture. The defendant hasn't made a record in this case. That court order is not sufficient. It is not the violation of the defendant's Fifth Amendment rights. If you get to the merits, first the defendant has to assert his Fifth Amendment rights, which he never did. The record doesn't show that he did that unequivocally and unambiguously. And second, there's three points. Back up. The exclusionary rule is a remedy to the Fifth Amendment right. The exclusionary rule says you can't use evidence that's obtained in violation of your Fifth Amendment rights. But the violation is you must speak to pretrial services. That's the Fifth Amendment violation. The exclusionary rule is the remedy. That's all it is. Respectfully, the court's order to comply is not a violation of the defendant's Fifth Amendment right. It's not. Respectfully, I think there's a problem with that argument. Respectfully, the law very clearly says first the defendant has to make a clear assertion. Secondly, the Fifth Amendment only speaks to compulsion. And in this case, what we do know from this very limited record is that the defendant did not feel compelled to answer all of those questions. He specifically didn't answer questions regarding the facts of this case. It shows that he wasn't intimidated by the trial court, and it shows that he did not feel compelled. It shows no Fifth Amendment violation. Perhaps it was also because the defendant had been advised of his Miranda rights and chose to invoke that right to those questions. But we don't know. The record doesn't show that. The defendant failed to raise the issue below. The Supreme Court clearly states that that's a fundamental deficiency. We don't have the threshold information to make the analysis that defense wants us to make. This court has to honor that forfeiture. We don't have the information in the record to make that type of analysis. The only thing that can be gleaned from the record is that there was no Fifth Amendment violation. Also, the Fifth Amendment only applies to questions that are designed to elicit an incriminating response. The probation officer's questions here are akin to routine booking questions. You're entitled to ask those types of questions, and you can use those answers against a defendant even without Miranda. It's the same thing that happened here. With all due respect, Hilliard and Hampton are both directly on point. In those cases, the same issues were presented to the courts. The issue in both those cases was whether the defendant was entitled to be Mirandized. That was the issue in both those cases. The issue was there was no record. They couldn't get to that issue because there was no record. The claim was I spoke to them without being Mirandized. Same claim here. No. No. That's what you're missing. The claim here is forget about whether you're Mirandized or not. The judge said to you, you must speak to pretrial services. And even though the trial court did that, the defendant still did not comply. He did not feel compelled to comply. To go into the details of the offense. That's true. That's right. But he did speak to pretrial services. But there's nothing. Maybe he did so voluntarily. The record doesn't show. And the Fifth Amendment doesn't preclude somebody from talking voluntarily about something. Maybe that's what happened here. Why do you assume it's voluntary when the court ordered him to do so? He chose. He did not invoke his Fifth Amendment. From the record, any silence as to anything in the record is going to have to be construed against the defendant. Any doubt that you have has to be construed against the defendant by law. That's what we have here. We have an abundance of doubt because the record isn't sufficient. It can't be found to be in favor of the defendant when the law says. The defendant had already made his decision. His decision was not to talk. We don't know why. He was then ordered to talk by the trial court. Now you're saying that he has not preserved his right because he didn't object to the trial court ordering him to do what he said he wouldn't do. He never said that he invoked his right to remain silent. That's what the law says he needs to do is to clearly and unequivocally invoke the Fifth Amendment right against self-incrimination. That's exactly what he did. Respectfully declining. We don't know that he's respectfully declining. Why? Maybe he wanted to be difficult. And maybe after that is when his attorney, as Justice Pierce said, spoke to him and said, don't be so difficult. This can actually benefit your delineation. This is something you're making up now. Maybe this happened. Maybe that happened. Exactly. And that's why our position is you can't get to this point. He exercised his right to remain silent. And then he was ordered to talk. So at that point he did what most reasonable people would do. They follow trial court orders. I follow trial court orders. You have to follow trial court orders. The defendant followed the trial court order. So now we have a defendant that's willing to follow trial court orders and he's being blasted for having done so. We're now saying that, oh, well, maybe he shouldn't have done it. What we're saying is that the record in this case, unfortunately, is insufficient to get to those issues. It's not there. And we can't read into the record what's not there. That's what you just did. You just told us that his attorney probably told him to go ahead and talk. All due respect, I was asked to answer questions regarding the merits of the case. No, you were referring back to what Justice Pierce said to you. We didn't ask you that question. Justice Pierce made a great point. Nobody asked you that question. If we're going to try to get to the merits, then it's all what is because there is nothing concrete in this record. And respectfully declining to answer questions is not an invocation of the right against self-incrimination. The law does not support that. And the trial court's order for him to comply, that, too, is not a violation of the Fifth Amendment. He has to feel compelled to answer. And obviously he didn't. What we have in the record is him choosing not to answer some of those questions. That speaks volumes. That shows that there was no Fifth Amendment violation. Let me ask a question, if I may. Seeing that this issue has been brought up on direct appeal, if the court found that because there is no record that indicates what really happened, other than the judge's comments, after he failed to cooperate with the probationers, could this be better developed on a PC without the state invoking res judicata or collateral establishment? Absolutely. In fact, the Illinois Supreme Court recently said that that is the proper avenue here, is either a post-conviction petition or a 2-1401 petition, if the claim even has merit. Which case are you referring to? In People v. Harris. It's 2018, Illinois 121932. That's the 18-year-old who wanted to be sentenced like a juvenile, and they said there's really no record to consider as an applied constitutional violation? Correct. And then they said that they asked if they could remand. The facts could be known as to what was said in the PSI by the probation officer, whether he was counseled to cooperate, whether he did this voluntarily, or whether he went in there kicking and screaming and saying, the only reason I'm here is because the judge is making me do this. We don't know any of that. It could be pro or it could be con. It could be completely neutral. But if we had a better record, we could make a better decision. Absolutely. That's the State's position exactly. Without that information, it's just guesswork, and we can't make those decisions based on guesswork. We don't have the information in the record. It's forfeited. And wouldn't you be arguing forfeiture on a PC as well? No, not necessarily, because it would depend on what he presented in terms of the record and what he could in terms of affidavits and provide, what the probation officer said happened, what the defense attorney said. But he said this pre-sentence report should not have been used because it was a result of a violation by Fifth Amendment rights. Wouldn't you be arguing forfeiture? You never asked to suppress it. You would argue the same arguments you're making here. You would still be arguing forfeiture. I promise you your supervisors are back there, but you're going to be arguing forfeiture. We would need to know. At least at that point, we would know if the defendant had been advised of his Miranda rights, if he had waived those rights. We don't have that information here. I understand that you don't have that information here, but I'm suggesting to you the possibility that you'd still be arguing forfeiture. And I think the defendant's position is none of that matters. That's the defendant's position. Your position is no matter what the judge said, he could have still decided later to voluntarily cooperate with pretrial services. Is that your position? That could have happened. And so many things could have happened. But, yes, the trial court's order alone does not violate the defendant's Fifth Amendment rights. And the Sprinkle Doctrine, too, if I may, does not apply here. Because? It only applies in extraordinary cases where either the trial court oversteps its authority in front of a jury or the defendant's objection would have fallen on deaf ears. And this was a bench trial, not a jury. And there really is no indication in the record that defense counsel's objection would not have been heard. The state's position is and remains that the defendant did not preserve the record here, that it's insufficient to make the determinations that defense counsel is asking you to make. The Illinois Supreme Court mandates in these types of situations that the forfeiture be honored. And as respectfully as I can, that is what we ask you to do. Thank you. Thank you. Good job. We have just a few brief points in rebuttal. First, as to first-pronged plain error and whether the evidence at sentencing was closely balanced. While in this case the information did come from the PSI, defense counsel could have provided mitigating information to the court at sentencing that did not come from the PSI. Here, defense counsel didn't do that, but that's because this information was already in the PSI. But it would have been possible for defense counsel to get mitigating evidence into the record without rules completing the PSI. I believe when we're making that kind of inquiry, we look at the evidence actually presented. We don't say would other evidence have been able to be provided that would have made it closely balanced. So I just think your closely balanced analysis just kind of doesn't work here. I'm just saying. Because if you take out the PSI, you take out everything. And there's nothing to be closely balanced about. I agree. I'd rather you move past that. I just think it's not going anywhere. All right. I would like, in that case, I will transition on to the Sprinkle Doctrine. In our opening brief, we cited several cases that we said would allow this court to apply Sprinkle to the case at bar. The state responded by arguing that Sprinkle doesn't apply because this is not a capital case, there wasn't a jury, and there was no compelling reason to relax the forfeiture rule. In this case, the trial court explicitly ordered Woods to abandon his Fifth Amendment rights during the sentencing stage of the case. And this is the stage where the United States Supreme Court has held that the right to remain silent is the most important, and that's Mitchell v. United States. So here, the fact that the trial court ordered Woods to abandon his Fifth Amendment rights at a critical stage of his case is a compelling circumstance warranting the application of the Sprinkle Doctrine. In our opening brief, we cited two non-capital cases in which reviewing courts applied Sprinkle and remanded a case for a new sentencing hearing in both Wardell, which was a First District case, and Saldivar, which was an Illinois Supreme Court case. The state did not address either of these cases in its brief. In Saldivar, the defendant was convicted of voluntary manslaughter and sentenced to seven years, which was only three years above the minimum sentence. The Illinois Supreme Court applied Sprinkle because the trial court improperly considered harm to the victim as an aggravating factor. And for that offense, that was already factored into the sentencing range for the offense. In that case, the Illinois Supreme Court reduced the sentence to four years, which was the minimum sentence. In Wardell, both of the defendants were convicted of robbery and aggravated criminal sexual assault. They were each sentenced to 69 years. This court remanded those cases for a new sentencing hearing based on the trial court's comments regarding the race of the victims and the cross-racial nature of the offenses at sentencing. While this is not specifically mentioned in Wardell, typically the jury is not present at the sentencing hearing. So it is reasonably conceivable that the sentencing hearing at issue in Wardell, just like the sentencing hearing here, no jury was actually present. So based on the cases we've cited in our opening brief, we believe that this court can apply the Sprinkle Doctrine to reach the error presented here. If this court has no further questions, we will rest at this time. Thank you. Thank you, counsel. Thank you both. It was really, as you can see, a very interesting argument. It was very well briefed and very well argued. So thank you. We will hear from us shortly.